UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CORINNE LEACH, M.D., PH.D.,

        Plaintiff,

  v.

**DECISION AND ORDER**

UNIVERSITY AT BUFFALO PEDIATRIC
ASSOCIATES, INC. D/B/A UBMD
PEDIATRICS, KALEIDA HEALTH, ANNE
MARIE REYNOLDS, M.D., and STEPHEN
LIPSHULTZ, M.D.,

20-CV-1836S

        Defendants.

## I.  INTRODUCTION

In this action, Plaintiff Corinne Leach seeks damages from the defendants for violating her rights under Title VII, the Age Discrimination in Employment Act ("ADEA"), New York Human Rights Law, and New York Labor Law when they forced her to retire based on her gender, age, and her reporting of regulatory violations, and when they retaliated against her after she filed an EEOC discrimination charge. Before this Court are the motions of Defendant Kaleida Health ("Kaleida") and Defendants UBMD Pediatrics, Anne Marie Reynolds, and Stephen Lipshultz ("the UBMD Defendants") to dismiss several of Leach's claims. This Court grants the motions in part, and denies them in part, for the following reasons.

## II.  BACKGROUND

This Court assumes the truth of the following factual allegations contained in Leach's complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v.

1

Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Corinne Leach, M.D., is a 66-year old female neonatal physician. (Complaint, Docket No. 1, ¶¶ 15-16.) She is board-certified in pediatrics and neonatal-perinatal medicine (Id., ¶ 16.) Kaleida Health is a not-for-profit healthcare network. (Id., ¶ 5.) UBMD is a practice plan and corporation. (Id., ¶ 4.)

UBMD hired Leach in 1988 to work as Medical Director of the perinatal bereavement program and medical director of palliative care at John R. Oishei Children's Hospital. (Id., ¶ 18.) From 2002 to 2018, she served as Quality Director of the Neonatal Intensive Care Unit at Kaleida. (Id., ¶ 19.) In 2019, Leach was promoted to full clinical professor at the University at Buffalo School of Medicine. (Id., ¶ 21.) The same year, Kaleida's Medical Executive Committee and the Clinical Chief of Service, Defendant Anne Reynolds, "reappointed Leach as a member of the Medical/Dental staff," stating that "[t]he Kaleida Health system is proud and happy to have the opportunity to work with you." (Id., ¶ 22.)

Defendant Anne Reynolds, M.D., is an employee of both UBMD and Kaleida, serving as UBMD's Interim Division Chief of Neonatology and as Kaleida's Medical Director of the NICU and Inpatient Nurse Practitioners and Physician Assistants (Id., ¶¶ 7-8). Defendant Stephen Lipshultz, M.D., is also an employee of both UBMD and Kaleida, serving as UBMD's Chair of Pediatrics and as Kaleida's Pediatric Chief of Service. (Id., ¶¶ 10-11.) Leach reported to Reynolds, and Reynolds reported to Lipshultz. (Id., ¶¶ 12-13.)

On July 18, 2019, Leach was notified about a New York State Department of Health Plan of Correction issued to Kaleida for failing to meet a United States Department

of Health and Human Services regulation. (Id., ¶ 25.) The plan addressed "cloning," an issue Leach had regularly raised to her superiors. (Id., ¶ 27.) Leach had repeatedly told her supervisor, Reynolds, that the production of patient progress notes by copying and pasting old notes—"cloning"—led to the inclusion of inaccurate and outdated information. (Id., ¶¶ 27-28.) The practice of "cloning" can lead to patient harm. (Id., ¶ 29.)

Leach repeatedly alerted Reynolds about this issue and expressed concerns about patient safety. (Id., ¶ 34.) She raised the issue with her physician partners as well. (Id., ¶¶ 37, 40.) She met with Kaleida leadership about this issue, but they did not implement changes that could resolve the safety issues. (Id., ¶¶ 45-47.)

In part due to her frustration with Kaleida's unwillingness to resolve the cloning issue, on November 28, 2019, Leach requested to transition to a part-time schedule, beginning February 1, 2020. (Id., ¶ 48.)

Leach also raised issues regarding the clinical competency of Advance Practice Providers[1] ("APPs") at Kaleida. (Id., ¶ 49.) She became concerned at one point about a Physician Assistant's ("PA's") failure to identify a critical medical issue. (Id., ¶ 53.) Leach used the opportunity to teach the PA and the rest of the team. (Id., ¶¶ 53-54.) Shortly after her request to work part time, she was notified that this PA had filed a "STAR" report against her, alleging that she had bullied the PA when she questioned the PA's understanding of the infant patient's condition and medical management plan. (Id., ¶ 52.) STAR is "the internal system at Kaleida that is used to report concerns or complaints about the actions of employees in the workplace." (Id., ¶ 51.) Leach did not receive any

---

[1] The term Advance Practice Providers refers to both Physician Assistants and Nurse Practitioners. (Complaint, Docket No. 1, ¶ 38.)

complaints regarding her care or communication style in the month after receiving the STAR report. (Id., ¶¶ 64-65.)

Leach spoke about the STAR report with Reynolds and with Oishei's Chief Medical Officer Dr. Steven Turkovich. (Id., ¶¶ 57-59.) Turkovich appeared supportive of Leach's concerns, stating that there were "generational issues" with newer PA's. (Id., ¶ 60.) He offered to speak with the APPs on how to interact with physicians, and to discuss concerns about APP's with Leach and her physician partners. (Id., ¶¶ 61-62.)

In late January 2020, Leach followed up with Reynolds regarding her plan to transition to part-time work. (Id., ¶ 67.) On Friday, January 24, 2020, Leach forwarded the STAR report and her response to it to her small group of partners, to give other physicians the ability to share experiences of safety issues. (Id., ¶ 70.) Sharing this information was consistent with the practice of neonatologists. (Id., ¶ 72.)  Reynolds, who was included in this email, replied to Leach, stating that she was concerned about liability to UBMD and Kaleida resulting from Leach's email. (Id., ¶ 73).

Lipshultz told Leach to meet with him regarding her "retirement" on January 27, 2020. (Id., ¶ 75.) At this "Termination Meeting," Lipshultz, Reynolds, Seema Moudgil, UBMD's Chief Operating Officer, and Lawrence DiGuilio, UBMD's general counsel, were present. (Id., ¶ 77.) Leach alleges that Kaleida knew this meeting would take place and that Lipshultz and Reynolds were acting as representatives of both UBMD and Kaleida. (Id., ¶¶ 87-88.) At the meeting, Leach was told that she could retire immediately or "UBMD would direct Kaleida to commence a medical executive committee ("MEC") investigation against her." (Id., ¶ 78.) Lipshultz told Leach that an MEC investigation on a physician's record can negatively impact that physician's future employment prospects. (Id., ¶ 82.)

Leach felt she had no choice but to retire immediately. (Id., ¶ 84.) No one at the meeting told Leach why she was being forced to retire or what she did wrong. (Id., ¶ 79.)

Leach alleges that PA's have raised similar complaints about the manner in which her younger male physician partners have spoken to the PA's about clinical care issues, but those younger male physicians were not subjected to discipline nor forced to retire or quit. (Id., ¶ 92.) After Leach's termination, she learned that staff were commenting that she had a history of "bullying" and that she was terminated because she suffered from "dementia." (Id., ¶ 91.)

Leach filed a charge of discrimination with the EEOC alleging gender and age discrimination against UBMD. (Id., ¶ 93.) After she filed the charge, UBMD withheld her personal belongings until November 19, 2020. (Id., ¶ 95.) Individuals who have not filed EEOC charges have been allowed to retrieve their possessions after they were terminated. (Id., ¶ 96.) UBMD also delayed providing credentialing information to a prospective employer. Arnot Health offered Leach a position, but would not allow her to practice medicine until credentialing was completed. (Id., ¶¶ 98-99.) In April 2020, Arnot Health requested credentialing paperwork from UBMD, and gave UBMD a deadline of May 26, 2020.  (Id., ¶ 101.) UBMD did not respond by this deadline. (Id., ¶ 103.) Because of this delay, Leach's start date was delayed until August 1, 2020. (Id., ¶ 104.)

## III.  DISCUSSION

Leach brings seven causes of action against Defendants.

She alleges that all defendants discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") and Older Workers Benefit Protection Act ("OWBPA") (First Cause of Action) and in violation of New York

State Human Rights Law ("NYSHRL") (Second Cause of Action).

Leach alleges that all defendants discriminated against her on the basis of sex in violation of Title VII (Third Cause of Action) and in violation of NYSHRL (Fourth Cause of Action). She alleges that UBMD, Reynolds, and Lipshultz retaliated against her for filing her EEOC charge, in violation of Title VII (Fifth Cause of Action) and NYSHRL (Sixth Cause of Action). Finally, she alleges that UBMD and Kaleida retaliated against her for reporting safety violations, in violation of New York State Labor Law §§ 740 and 741 (Seventh Cause of Action).

Kaleida argues that Leach has failed to state a claim for discrimination under Title VII and ADEA, that her OWBPA claim is impossible as a matter of law, and that she has not stated a claim against Kaleida under New York Labor Law.

The UBMD Defendants argue that Leach's federal claims against Reynolds and Lipshultz should be dismissed because neither Title VII nor the ADEA provides for individual liability. Like Kaleida, they argue that the OWBPA does not create an independent cause of action. Finally, they argue that Leach has not stated a claim for age or sex discrimination or for retaliation under Title VII, the ADEA or NYSHRL.

Leach concedes that the individual claims against Reynolds and Lipshultz may be dismissed under federal law and agrees that her age discrimination claim does not arise under the OWBPA. She opposes all of the defendants' other arguments.

A.    **Motion to Dismiss**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed.

R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id.; Fed. R. Civ. P. 8(a)(2).  Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v.

Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).   This examination is context-specific and requires that the court draw on its judicial experience and common sense.   Iqbal, 556 U.S. at 679.   First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away.   See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

Here, the defendants bring two independent motions to dismiss. This Court will discuss them in the order received.

**B.   Kaleida's Motion to Dismiss**

   **1.  Leach sufficiently alleges that Kaleida was an "employer" to state a claim under all relevant statutes**

Kaleida first argues that it cannot be held liable because it did not employ Leach. Leach contends that her complaint contains sufficient factual matter to demonstrate a joint-employer relationship between Kaleida and UBMD.

The "joint-employer doctrine" imposes liability when "separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), aff'd sub nom. Lima v. Adecco &/or Platform Learning, Inc., 375 F. App'x 54 (2d Cir. 2010) (quoting Gore v. RBA Grp., Inc., No. 03 Civ. 9442(KMK)(JCF), 2008 WL 857530, at *4 (S.D.N.Y. Mar. 31, 2008)). "A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees." Yousef v. Al

8

Jazeera Media Network, No. 16-CV-6416 (CM), 2018 WL 6332904, at *1–2 (S.D.N.Y. Oct. 31, 2018) (quoting N.L.R.B. v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994)).

Courts should apply an "economic realit[ies] test" based on "the circumstances of the whole activity" but they are free to consider any other factors they deem relevant to their assessment of the economic realities. McFarlane v. Iron Mountain Inc., No. 17CV3311(DLC), 2018 WL 3773988, at *6 (S.D.N.Y. Aug. 9, 2018) (citing Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 71-72 (2d Cir. 2003)). This inquiry is "functional" and "factual." Daniel v. T & M Prot. Res., Inc., 992 F. Supp. 2d 302, 313 (S.D.N.Y. 2014). Factors that courts have used to examine whether an entity constitutes a joint employer include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Shiflett v. Scores Holding Co., 601 F. App'x 28, 30 (2d Cir. 2015) (citing St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013)).

Because the inquiry into joint-employer status requires intensive examination of the facts, it cannot be decided on a motion to dismiss. Popat v. Levy, 328 F. Supp. 3d 106, 121 (W.D.N.Y. 2018) (citing St. Jean, 963 F. Supp. 2d at 308 (denying motion to dismiss because "whether the [two defendants] were [the p]laintiff's joint employers is a question of fact")).

Here, Leach alleges that she was "appointed by Kaleida." (Complaint, Docket No. 1, ¶¶ 18-19.) She alleges that, in response to her interaction with the PA, a STAR report— a Kaleida disciplinary report—was filed against her. Leach further alleges that Lipshultz and Reynolds, Kaleida employees, were her supervisors. At the meeting at which Leach was forced to retire, Lipshultz threatened that if she did not retire immediately, a Kaleida

MER report would be filed against her. Although factual questions may remain concerning the relationship between Kaleida and UBMD, Reynolds, and Lipshultz, and concerning the nature of Leach's relationship to each, at this stage, Leach sufficiently alleges that Kaleida had supervisory and disciplinary authority over her such that it can  be considered a joint employer with UBMD.

Kaleida argues that Reynolds and Lipshultz communicated with Leach at the meeting solely in their UBMD capacities, while Leach argues that Reynolds functioned as a Kaleida supervisor in these interactions. This is a factual issue that  cannot be resolved at this stage.

Of course, "[e]ven where two companies are deemed a joint employer, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." St. Jean., 963 F. Supp. 2d at 308 (quoting Goodman v. Port Auth. of N.Y. and N.J., 850 F. Supp. 2d 363, 387 (S.D.N.Y. 2012)). For the purposes of this motion, however, Leach has sufficiently alleged that UBMD and Kaleida were joint employers. Kaleida's motion to dismiss on this basis will accordingly be denied.

### 2. Leach alleges sufficient facts to state a claim for gender and age discrimination.

Kaleida next argues that Leach has not stated a claim because she fails to allege gender or age discrimination. Leach argues that she has alleged all the elements of a discrimination claim.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

10

To state a claim in an employment discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against him; and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015); see also Littlejohn v. City of New York, 795 F.3d 297, 310 (2d Cir. 2015).

To defeat a motion to dismiss, a plaintiff "need only give plausible support to a minimal inference" that "his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 86 (quoting Littlejohn, 795 F.3d at 311).

Examples of adverse action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85 (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)). "Constructive discharge" is one form of adverse action. Pa. State Police v. Suders, 542 U.S. 129, 141, 124 S. Ct. 2342, 2351, 159 L. Ed. 2d 204 (2004) ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.").

Kaleida argues that Leach fails to allege an adverse action because she does not state a claim for constructive discharge based on a "hostile work environment." (Docket No. 21-3 at p. 14, citing Connolly v. Equity Servs, 756 F. App'x 83, (2d Cir. 2019)). But Kaleida defines constructive discharge too narrowly. A plaintiff is not required in all cases to allege a "hostile work environment," which is merely "one subset" of discrimination

claims. <u>Suders</u>, 542 U.S. at 143. A plaintiff can state a claim for constructive discharge where an "employer clearly expresse[s] his desire that [an] employee resign because such a statement would force a reasonable person to resign." <u>Pierce v. Netzel</u>, 225 F.3d 646 (2d Cir. 2000) (quoting <u>Lopez v. S.B. Thomas, Inc.</u>, 831 F.2d 1184, 1188-89 (2d Cir.1987)).

Taking Leach's allegations as true, she has adequately pleaded the adverse action element of a claim. She states that she was offered a choice between immediately retiring and having an MEC investigation launched. Lipshultz, a Kaleida employee, told her that an MEC investigation on her record would jeopardize her career. Leach alleges that she did not want to retire, but that fear of the Kaleida MEC investigation forced her to do so. This constitutes a sufficiently adverse action to state a claim.

Kaleida also argues that Leach has failed to allege that any adverse action on its part was motivated by her gender or age. Kaleida points to other elements in her complaint, including her admonishment of a younger PA and her email response to the STAR report, as reasons for her dismissal. But Kaleida's true motivation is a factual question that cannot be answered here. At this stage, Leach needs only to plead facts allowing a minimal inference of discrimination. <u>Vega</u>, 801 F.3d at 86. She does this by alleging that younger male colleagues did not face any consequences for admonishing APPs who made clinical errors while Leach, an older woman, did. She notes a conversation with a Kaleida supervisor about how "generational differences" contributed to the conflict that led, at least in part, to her alleged forced retirement. Taking her allegations as true, this Court finds it plausible that Leach's age and gender were motivating factors in the decision to make her retire.

**3. Leach's claim for violation of OWBPA, inasmuch as she brings one, is dismissed.**

Kaleida argues, and Leach concedes, that the Older Workers Benefit Protection Act ("OWBPA") does not create a cause of action separate from the ADEA.

The OWBPA does not create an individual cause of action, nor does a violation of the OWBPA's provisions, without more, establish an age discrimination claim. E.E.O.C. v. UBS Brinson, Inc., No. 02CIV.3745RMBTK, 2003 WL 133235, at *3 (S.D.N.Y. Jan. 15, 2003) (collecting cases). Rather, the OWBPA provides a "shield" for employers wishing to obtain a waiver and release of an employee's ADEA claims against them. 29 C.F.R. § 1625.22(e).

Leach's complaint does not allege that she was given any such waiver by Kaleida, nor that Kaleida violated any provisions of the OWBPA, although in her opposition to Kaleida's motion she refers to receiving some kind of paperwork. (Docket No. 26 at p. 27). Therefore, Leach does not state a claim under this provision.

Leach argues that the manner in which defendants terminated her, giving her what appeared to be OWBPA paperwork when they forced her to retire, is evidence of their pretextual motivations in terminating her. This theory may relate to her ADEA claim. Any claim that she brings arising solely under the OWBPA, however, will be dismissed.

**4. Leach states a claim for violation of New York's "whistleblower" statutes.**

Kaleida argues that Leach has failed to state a claim under New York Labor Law §§ 740 or 741 because she did not identify a practice that violated any rule or regulation.

Section 740 of New York's Labor Law provides, in relevant part, that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee . . . discloses or threatens to disclose to a supervisor or to a public body an

activity, policy, or practice of the employer that is in violation of law, rule or regulation which violation creates and prevents a substantial and specific danger to the public health or safety." N.Y. Lab. Law § 740.

New York's Court of Appeals has clarified that "in order to *recover* under § 740, the plaintiff has the burden of proving that an actual violation occurred, as opposed to merely establishing that the plaintiff possessed a reasonable belief that a violation occurred." Webb-Weber v. Cmty. Action for Hum. Servs., Inc., 23 N.Y.3d 448, 452–53, 15 N.E.3d 1172 (2014) (emphasis in the original). "However, for pleading purposes, the complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." Id.

Kaleida first argues that it cannot be liable under § 740 because it was not Leach's employer. As discussed above, Leach has sufficiently alleged that Kaleida was her employer.

Kaleida next argues that Leach's complaint fails because she does not identify the rule Kaleida allegedly violated. But at this stage, Leach need only allege that she reported the activity or practice in which the employer engaged. She has done this: Leach alleges that Defendants promoted and engaged in a process of "cloning" patient notes which led to inaccuracies in patient records and endangered patient safety, and that she reported and complained about this practice to Kaleida. (See Complaint, Docket No. 1, ¶¶ 27, 30, 33.)

This Court also finds that Leach has adequately pled the element of retaliation

under § 740. "Retaliatory personnel action" means the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment. N.Y. Lab. Law § 740 (1)(e). Leach's forced resignation constitutes an adverse employment action.

New York Labor Law § 741 forbids retaliation specifically against healthcare workers who disclose or threaten to disclose activities, policies, or practices of an employer that the employee believes constitute improper quality of patient care. N.Y. Lab. Law § 741. Section 741 explicitly relies on § 740 for enforcement, and "a plaintiff health care employee can only recover damages for a section 741/740 (4) violation (specific) *or* a section 740 violation (general), but *not* for both." Reddington v. Staten Island Univ. Hosp., 11 N.Y.3d 80, 89, 893 N.E.2d 120, 125 (2008) (emphasis in the original). Factual discovery will reveal the bases for Leach's respective § 740 and §741 claims. At this stage, Kaleida's motion to dismiss Leach's § 740 and § 741 claims will be denied.

**C.     UBMD Defendants' Motion to Dismiss**

   **1.  Leach's Title VII and ADEA claims against Reynolds and Lipshultz will be dismissed.**

The UBMD Defendants argue that Leach's claims against Reynolds and Lipshultz arising under Title VII and the ADEA should be dismissed because these statutes do not provide a cause of action against individuals. Leach does not contest this, but she argues that her related New York Human Rights Law claims against Reynolds and Lipshultz should remain.

It is well established that individual liability is not possible under either Title VII or the ADEA. Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012) (Title VII does not impose liability on individuals); Cherry v. Toussaint, 50 F. App'x 476, 477 (2d Cir. 2002)

(ADEA precludes individual liability). For this reason, this Court grants as unopposed the UBMD defendants' motion to dismiss Leach's first, third, and fifth claims for relief as against Drs. Reynolds and Lipshultz.

Because the UBMD defendants do not seek dismissal of Leach's discrimination claims against Reynolds and Lipshultz arising under New York Human Rights Law, this Court will leave intact Leach's state law claims of discrimination as against Reynolds and Lipshultz. (Second and Fourth causes of action.)

### 2. Leach's OWBPA claim, insofar as she brings one, is dismissed because that statute does not provide a separate cause of action.

The UBMD Defendants argue, as does Kaleida, that there is no independent cause of action under the OWBPA. As discussed above, Leach does not appear to be bringing such a claim, but to the extent that she does, it is dismissed. <u>Supra</u>, p. 12. She will, however, be able to use any paperwork given to her during the "retirement meeting" to support her ADEA claim.

### 3. Leach adequately pleads discrimination, both before the EEOC and in her complaint.

UBMD Pediatrics, the remaining UBMD Defendant, argues that Leach did not adequately allege "constructive discharge" in her EEOC charge or in her complaint, so that she has both failed to exhaust her remedies and failed to state a claim for discrimination.

#### a. Leach's complaint and EEOC charge both state a claim for discrimination.

Like Kaleida, UBMD Pediatrics argues that Leach has not alleged a "hostile work environment" and therefore has not alleged an adverse action. This argument is neither correct nor convincing. A hostile work environment claim is simply "one subset of Title VII

16

constructive discharge claims." Suders, 542 U.S. at 143.  As discussed above, Leach has alleged that adverse employment action occurred when UBMD Pediatrics allegedly gave her a "choice" between retiring immediately and launching an investigation that could harm her chances of working again.

UBMD Pediatrics makes the same argument as to Leach's EEOC discrimination charge, arguing that she failed to assert that she "was subjected to a hostile work environment or such intolerable conditions that she had no choice but to resign" and therefore has not exhausted her remedies before the EEOC. (Docket No. 22-2 at p. 15.)

In her EEOC charge, Leach states that she was directed to attend a meeting at which she was informed that she must decide within 2-3 minutes between retiring and having an investigation launched against her. [2] (See Docket No. 22-1 at pp. 6-20; Docket No. 24-2 at pp. 2-16.)  She alleges that Lipshultz stated that for "a prospective employer, nobody wants to hire somebody where there's something that's in asterisks on their record." (Docket No. 24-2 at p. 13.) She alleges that she felt she had no choice but to retire immediately. (Id.) This suffices to allege an adverse action and to properly bring her discrimination claim before the EEOC.

Because this Court finds that Leach did not fail to exhaust her remedies for her discrimination claim, and properly pleads discrimination under Title VII and the ADEA in her complaint, the UBMD Defendants' motion to dismiss these claims as against UBMD

---

[2] When determining the sufficiency of a plaintiff's claim for Rule 12 (b)(6) purposes, courts may consider the factual allegations in the complaint, documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or documents that were either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.  Brass v. Am. Firm Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Cortec Ind., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991). Because Leach relied on her EEOC charges, including her supplemental charge of retaliation, in her complaint, this Court will consider them here.

Pediatrics is denied.

### 4. Leach has sufficiently pled retaliation by UBMD Pediatrics (Fifth and Sixth Causes of Action).

UBMD Pediatrics, the remaining UBMD defendant, argues that Leach's retaliation claim fails both because she failed to raise it before the EEOC, and because her complaint fails to state a claim for retaliation. Both arguments fail.

#### a) Leach's supplementation of her EEOC charge raises the issue of retaliation

UBMD Pediatrics argues that Leach's complaint does not sufficiently allege that she exhausted her retaliation claim before the EEOC. Specifically, it argues that her March 3, 2020 charge does not contain allegations related to retaliatory behavior.

In her response, Leach submits a copy of an addendum she filed with the EEOC on June 15, 2020, alleging retaliatory conduct, a document on which she presumably relied when filing her complaint. (Docket No. 24-3 at pp. 2-5.) Leach's addendum demonstrates that she filed a supplemental EEOC charge of retaliation for her March discrimination charge. In her supplemental charge, she alleges that, after she filed her discrimination charge, UBMD Pediatrics failed to return her belongings to her, and failed to timely provide documentation to a potential new employer, and that this delayed her ability to begin her new job. (Docket No. 24-3 at pp. 3-4.) This Court finds that these allegations sufficiently demonstrate that she alleged retaliation before the EEOC, and thus did not fail to exhaust her remedies as to retaliation.

#### b) Leach states a claim for retaliation under Title VII

UBMD Pediatrics also argues that Leach fails to state a claim for retaliation because she does not describe any adverse actions.

To establish a prima facie case of retaliation, including post-termination retaliation, a plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. McMenemy v. City of Rochester, 241 F.3d 279, 282–83 (2d Cir. 2001) (citing Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000)); see also Male v. Tops Markets, LLC, No. 08-CV-6234, 2010 WL 4319769, at *2 (W.D.N.Y. Oct. 29, 2010).

In defining what constitutes an "adverse employment action" for a retaliation claim, both UBMD and Leach rely on law stating that an "adverse employment action" must be an action injurious to current employment or the ability to secure future employment. See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).

But adverse actions for the purpose of a retaliation claim are "not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 126 S. Ct. 2405, 2412–13, 165 L. Ed. 2d 345 (2006). Rather, the proper question for a retaliation claim is "whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 43–44 (2d Cir. 2019) (citing Kessler, 461 F.3d at 209); see also White, 548 U.S. at 57.

Applying this standard to Leach's complaint, this Court finds that she has stated a claim for retaliation. She alleges that she filed an EEOC charge of discrimination against UBMD. She alleges that, after her charge was filed, UBMD would not allow her to retrieve her possessions from her office and delayed providing her prospective employer with the

paperwork needed for her to begin a new job. She alleges that this caused her emotional distress and that the paperwork delay prevented her from working for a period of time.

Taking her allegations as true, this Court finds that Leach has stated a claim for retaliation against UBMD Pediatrics. The UBMD Defendants' motion to dismiss Leach's retaliation claim is therefore denied.

## IV.  CONCLUSION

Because Leach has adequately pled that Kaleida functioned as a joint employer, that Kaleida took adverse employment actions supporting a minimal inference of discriminatory intent, and that she reported a practice that endangered patient safety, Kaleida's motion to dismiss is denied.

The UB Defendants' motion to dismiss is granted in part and denied in part. Because claims cannot be brought against individual defendants under Title VII or the ADEA, Leach's claims against Reynolds and Lipshultz arising under those statutes will be dismissed. However, because Leach exhausted her discrimination and retaliation claims before the EEOC, and because Leach has adequately stated adverse employment actions under the standards for both discrimination and retaliation, the UBMD Defendants' motion to dismiss her Title VII and ADEA discrimination claims and Title VII retaliation claim as against UBMD Pediatrics will be denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Kaleida's Motion to Dismiss (Docket No. 21) is DENIED.

FURTHER, the UBMD Defendants' Motion to Dismiss (Docket No. 22) is

GRANTED IN PART and DENIED IN PART.

FURTHER, that all Defendants shall file an answer or otherwise move within 14 days of the entry date of this decision consistent with Rule 12 (a)(4)(A).

SO ORDERED.

Dated:          April 30, 2021
                Buffalo, New York


                                                    s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                              United States District Judge

21